**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8 　　　　IN THE UNITED STATES DISTRICT COURT

9 　　　FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 ALLMERICA FINANCIAL LIFE 　　　　No　 C-96-0385 VRW
INSURANCE AND ANNUITY COMPANY,
12 　　　　　　　　　　　　　　　　　　ORDER

　　　　Plaintiff,
13
　　　　v
14
JOHN DALESSIO,
15
　　　　Defendant.
16 _____/

17

18 　　　　Defendant John Dalessio and plaintiff Allmerica Financial

19 Life Insurance and Annuity Company ("Allmerica") cross-move for

20 summary judgment on Allmerica's claims for fraud and restitution

21 against Dalessio.  For reasons discussed below, Dalessio's motion

22 is DENIED and Allmerica's motion is GRANTED IN PART and DENIED IN

23 PART.

24

25 　　　　　　　　　　　　　　I

26 　　　　On March 31, 1988, Dalessio received a disability

27 insurance policy from SMA Life Assurance Company ("SMA"),

28 Allmerica's predecessor in interest.  Dalessio contends that he did

**United States District Court**
For the Northern District of California

1  not submit an application to SMA, but rather State Mutual Life

2  Assurance Company ("State Mutual").  In his application, Dalessio

3  represented that he was in good health.  Doc #211 (Kwasniak Decl)

4  ¶¶2, 5.  Dalessio admits that he has been disabled since 1980 with

5  several physical problems and a severe memory disability.  E g, Doc

6  #243 (Dalessio Decl) ¶10.  Dalessio also testified that he signed

7  the application and that the application contained

8  misrepresentations and omitted facts.  Doc #212 (Shane Decl), Ex B

9  (Dalessio Depo) at 167:17:20, 177:5-19, 179:9-19.

10          On August 28, 1990, Dalessio filed a claim for disability

11  benefits.  Kwasniak Decl, Ex E.  As the basis for his claim,

12  Dalessio stated that a car accident in 1989 caused him to be

13  totally disabled.  Id.  Allmerica paid Dalessio a total of

14  $253,527.53 in disability benefits from 1990 until 1995.  Kwasniak

15  Decl ¶21.  In October 1995, Allmerica received information from the

16  federal government that Dalessio had been disabled since 1980.

17  Allmerica investigated, attempted to rescind the policy by

18  terminating Dalessio's benefits and filed this diversity action in

19  1996.

20          On June 28, 2002, the court granted summary judgment in

21  favor of Allmerica on its claim for rescission and Dalessio's

22  counterclaims (the "6/28/02 order").  Doc #229.  As Allmerica has

23  since retracted its claim for breach of the implied covenant of

24  good faith and fair dealing, Doc #272 at 10, the only claims that

25  remain are Allmerica's claims for fraud and restitution.  Both

26  parties move for summary judgment on the remaining claims.

27  Allmerica seeks restitution in the amount of $253,527.53 for

28  benefits paid less $8,299.44 in premiums paid by Dalessio, plus

2

attorney fees and interest.

Before proceeding to the merits, the court pauses to address the procedural irregularities attending the present motions. On February 5, 2004, the court directed Allmerica to submit its summary judgment motion by March 4, 2004, or to attend a case management conference. Doc #251. This deadline was extended to May 6, 2004. Doc #256. On November 19, 2004, Allmerica stated its intention to file a motion for summary judgment by December 18, 2004. Doc #267. When Allmerica failed to do so, defendant Dalessio filed his motion for summary judgment on April 27, 2005. Doc #270. Allmerica filed its opposition and cross-motion on June 16, 2005, exactly 21 days before the scheduled hearing date. Doc #272. Allmerica did not comply with the 35-day notice period required in Civ L R 7-2(a) with respect to its cross-motion. As the cross-motion was not timely, Dalessio claims he could not file an opposition to the cross-motion within the 21-day notice period required in Civ L R 7-3(a). Doc #274. Because Dalessio's arguments and evidence were fully presented in the memorandum in support of his motion (to say nothing of briefing in connection with earlier dispositive motions and motions for reconsideration), the court concludes that Dalessio will not be prejudiced by adjudication of the motions based on the briefing as it now stands, especially considering that Dalessio did not avail himself of an opportunity to reply to Allmerica's opposition. See Civ L R 7-3(c). The court will, of course, consider Dalessio's memorandum in support of his motion for purposes of both motions.

//

//

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

II

In reviewing a motion for summary judgment, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v Liberty Lobby, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp v Catrett, 477 US 317, 322-23 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists. TW Elec Serv v Pacific Elec Contractors Ass'n, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id at 249.

The evidence presented by both parties must be admissible. FRCP 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine

issues of fact and defeat summary judgment.  <u>Thornhill Publishing Co, Inc v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979).  Hearsay statements in affidavits are inadmissible.  <u>Japan Telecom, Inc v Japan Telecom America Inc</u>, 287 F3d 866, 875 n 1 (9th Cir 2004).

III

As a preliminary matter, the court considers the parties' evidentiary challenges.  Briefly stated, because the statements and evidence contained in the declaration submitted by Dalessio have not affected the disposition of the present motions, Allmerica's motion to strike, Doc #278, is DENIED AS MOOT.

Although Dalessio does not lodge a formal objection, he does argue in passing that Allmerica's "files are sufficiently unreliable as to preclude their use in determining when [Allmerica] received documents."  Doc #270 at 12.  Putting aside that Dalessio's argument is completely unsubstantiated, the court has found it unnecessary to determine "when [Allmerica] received documents" for purposes of the present motion.  Dalessio's objection is accordingly OVERRULED.

IV

The court first addresses the parties' motions respecting Allmerica's claim for fraud.  The court notes at the outset that Allmerica's ability to recover damages for fraud has not been compromised by the court's order rescinding the insurance policy.  The right to rescission of an insurance contract does not derogate the right to pursue other remedies.  <u>Williamson & Vollmer Engineering, Inc v Sequoia Ins Co</u>, 64 Cal App 3d 261, 275 (1976).

United States District Court

For the Northern District of California

But Allmerica cannot obtain a double recovery.  Cal Civ Code §
1692.  In this case, Allmerica seeks punitive damages on its fraud
claim.  California courts have allowed plaintiffs to seek punitive
damages for fraud even after summary judgment has been granted on a
claim for rescission.  See Cobian v Ordonez, 103 Cal App 3d Supp
22, 28-29 (1980); cf Douglas v Ostermeier, 1 Cal App 4th 729, 750 n
3 (1991).

     The elements of fraud are (1) a misrepresentation of
material fact, (2) knowledge of falsity, (3) intent to defraud, (4)
justifiable reliance and (5) damages.  E g, Engalla v Permanente
Medical Group, Inc, 15 Cal 4th 951, 974 (1997); Cal Civ Code
§ 1572.  Under Cal Civ Code § 1572, liability for actual fraud is
limited to acts committed with the intent to deceive another party
and induce that party to enter into the underlying contract.


                              A

     The court addresses Allmerica's motion first, as it will
not detain the court long.  Allmerica does nothing more than argue
that in finding that Dalessio misrepresented material facts on his
application, the court also found fraudulent intent in the 6/28/02
order.  The court made no such finding and no such finding was
required.  See, e g, Barrera v State Farm Mut Auto Ins Co, 71 Cal
2d 659, 665 n 4 (1969) (observing that under Cal Ins Code § 331,
"whether the insured misstated or concealed certain facts with the
intention to deceive is irrelevant to the right to rescind").  Nor
is it proper at summary judgment for the court to infer Dalessio's
knowledge of falsity and intent to deceive from the fact that
Dalessio made material misrepresentations.  Allmerica's motion for

summary judgment in its favor on its fraud claim is DENIED.

**B**

**1**

Dalessio first argues that he applied to State Mutual, not SMA, and therefore could not have made any misrepresentations to SMA.  In the 6/28/02 order, the court implicitly found that Dalessio applied to SMA.  Doc #229 at 2.  In his motion for reconsideration of the 6/28/02 order, Dalessio advanced the same argument that he could not have made any misrepresentations to SMA because he applied to State Mutual.  Doc #242.  The court declined to address the merits of this argument because the supporting evidence was available before the parties submitted their earlier cross-motions for summary judgment and Dalessio did not establish any other ground for reconsideration.  Doc #251 at 4.  In effect, Dalessio again requests reconsideration of the court's finding that Dalessio misrepresented facts on his application based on evidence that was available when the parties filed their cross-motions in 2002.

Although the "law of the case" doctrine is not an absolute bar from reconsideration, courts generally reconsider previously decided questions only in cases in which there has been an intervening change of controlling authority, new evidence has surfaced or the previous disposition was clearly erroneous and would work a manifest injustice.  Leslie Salt Co v United States, 55 F3d 1388, 1393 (9th Cir 1995).  Reliance upon an earlier order granting summary judgment as law of the case for purposes of a subsequent motion for summary judgment is inappropriate when new

**7**

evidence has been developed in the intervening period.  See <u>Cable &</u>
<u>Computer Technology Inc v Lockheed Sanders, Inc</u>, 214 F3d 1030, 1038
(9th Cir 2000).  But that is not this case.

Even if the court were to treat Dalessio's proffered
evidence as new, the court would conclude that Dalessio is not
entitled to summary judgment on this basis.  Dalessio's argument is
based upon a single piece of evidence:  Two checkboxes appear at
the top of "Part II" of Dalessio's application.  Next to one reads
State Mutual's full name; next to the other reads SMA's full name.
Below the checkboxes is a parenthetical instruction to "[c]heck
applicable box(es)."  The box checked on Part II of Dalessio's
application corresponds to State Mutual.  Doc #1 (Compl), Ex B.

Viewed in context, the court finds this to be
inconsequential.  First, Dalessio testified that the only portion
of Part II of his application that is in his handwriting is his
signature at the bottom of the page, and that the rest of Part II
was filled out by a medical examiner.  Dalessio Depo at 174:17-19.
Further, on "Part I" of the application, checkboxes corresponding
to <u>both</u> SMA and State Mutual are checked.  Compl, Ex B.  On the
amendment to the application (which bears Dalessio's signature),
only the box corresponding to <u>SMA</u> is checked.  Id, Ex C.  Dalessio
paid his first premium with a handwritten check payable to SMA.
Doc #92, Ex E.  And countless policy riders and other documents
sent to Dalessio would have made it abundantly clear to Dalessio
that SMA was his insurer.  One reasonable inference that can be
drawn from this evidence is that the individual who filled out Part
II of Dalessio's application mistakenly checked the box
corresponding to State Mutual.  At best, there is an issue ——

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

perhaps material, perhaps not ⸺ regarding the insurance company to which Dalessio intended to apply.

Even if Dalessio could conclusively show that he applied to State Mutual rather than SMA, that would not necessarily end the inquiry. California courts have adopted the doctrine of "indirect deception," whereby contractual privity is not a *sine qua non* to a claim for fraud. See, e g, <u>Geernaert v Mitchell</u>, 31 Cal App 4th 601, 605-09 (1995). Under this doctrine, Dalessio is entitled to summary judgment if he can show that he had no reason to expect that SMA would rely upon the misrepresentations in his application. See id at 609 (implying that summary judgment is not appropriate unless the defendant "had no reason to expect reliance by the plaintiffs"). Dalessio has made no such showing. To the contrary, in addition to the application materials bearing a check mark next to SMA's name, there is other evidence that Dalessio was aware that he was applying to SMA, not State Mutual. See Doc #92 (Gong Decl) ¶3 (suggesting that the agent who sold Dalessio the policy led Dalessio to believe that he was applying to SMA). Accordingly, summary judgment cannot be granted on this basis.

2

Next, Dalessio argues that Allmerica cannot prove that Dalessio knew his representations were false.

During his deposition, Dalessio testified that his "No" answer to the question on the application asking whether he had ever received benefits "was incorrect because I was receiving partial disability from the federal government, <u>and I would have</u> <u>been aware of it at th[e] time</u> [the application was completed]

9

**\* \* \*."  Dalessio Depo at 258:19-21 (emphasis added).  Dalessio contends this statement is inadmissible, relying primarily upon the court's earlier ruling that because Dalessio has no long term memory of events that occurred after 1980, Dalessio lacks the personal knowledge necessary to testify competently about events that occurred after that time in the absence of supporting evidence such as his personal records.  Doc #229 at 2-3.**

**Dalessio attempts to extend the court's previous evidentiary ruling too far.  The court ultimately struck a portion of Dalessio's sworn affidavit in which he stated that he "[knew]" he performed legal services in 1989 because, in the absence of any explanation for his ability to recall this particular fact, it contradicted his deposition testimony that he could not recall most particulars from that time frame.  In contrast, Dalessio's statement that he would have known he was receiving partial disability payments at the time he completed his insurance application was made at his deposition.  The difference is significant because Dalessio "rel[ied] on his review of documents and his notes, calendars, and other resources" for purposes of his deposition testimony.  Shane Decl, Ex A.**

**In any event, "evidence of the falsity of a representation is sufficient to raise a triable issue of fact as to the elements of the knowledge of the falsity."  <u>Hart v Browne</u>, 103 Cal App 3d 947, 957 (1980) (citing <u>Maxson v Llewelyn</u>, 122 Cal 195 (1898)).  Dalessio has failed to carry his burden of demonstrating the absence of a triable issue of fact regarding his knowledge of falsity.  It matters not, then, that Allmerica did not address knowledge of falsity in its opposition.**

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

3

Next, Dalessio contends that there is no evidence
sufficient to create a genuine issue of material fact regarding his
fraudulent intent.  Dalessio relies primarily upon the fact that he
provided the name of his treating physician on his application, as
well as "all of the information needed to obtain his complete
medical records from every source."  Doc #270 at 14.  For the
proposition that "California courts have found similar facts to be
strong circumstantial evidence that an insured did not intend to
mislead an insurer," id, Dalessio cites United Fidelity Life Ins Co
v Emert, 49 Cal App 4th 941 (1996), and Rutherford v Prudential Ins
Co, 234 Cal App 2d 719 (1965).

Apparently, Dalessio cites United Fidelity for its remark
that "[p]resumably any insured who lies about his medical condition
on the application is also likely to omit his treating physician or
entity with information regarding the true state of his health."
49 Cal App 4th at 945.  This does not support Dalessio's argument
for two reasons.  First, the court was addressing an insurer's
attempt to overcome an incontestability clause by arguing that it
could not have meaningfully investigated any fraud on the part of
the defendant without the name of his doctors.  The court was
merely emphasizing that there was nothing special about the case
that would justify removing the incontestability bar.  Second, even
taking the statement at face value, the court's suggestion that
fraudfeasors "likely" will not include certain sources of
information on their application does not amount to a rule that
entitles a defendant-insured to summary judgment simply because he
included sources of information from which the truth could be

11

ascertained.

Although more cogent, <u>Rutherford</u> is also unavailing. There, the surviving widow of an insured obtained a jury verdict against an insurer on her claim for benefits under the policy issued to the insured-decedent, and the insurer appealed the trial court's denial of its motion for judgment notwithstanding the verdict. <u>Rutherford</u>, 234 Cal App 2d at 721-22. One issue on appeal was whether the insured was entitled to judgment due to misrepresentations of material fact contained in the application. The appellate court let the verdict stand because the insured was led to believe by the agent for the insurer that the omitted information was not material. In this regard, the insured's "good faith and belief that he had made complete, thorough and accurate representations to the insurance company [was] supported by the fact" that he had authorized the release of his medical history and provided the name of a doctor who had performed a procedure that had not been disclosed on the application. Id at 731. Like <u>United Fidelity</u>, however, <u>Rutherford</u> does not preclude a finding of fraudulent intent as a matter of law.

To be sure, if the trier of fact finds that Dalessio included all sources of information from which Allmerica could have ascertained Dalessio's true medical history, a finding in his favor on the fraud claim could hardly be second-guessed. But because the factfinder could conclude that Dalessio knew at least some of his representations were false when made, the factfinder could further infer intent to deceive. See, e g, <u>Griswold v Morrison</u>, 53 Cal App 93, 101 (1921) ("A misrepresentation knowingly made is sufficient to warrant an inference of fraudulent intent * * *."), disapproved

United States District Court

For the Northern District of California

on other grounds, <u>Gagne v Bertran</u>, 43 Cal 2d 481 (1954); cf <u>Gagne</u>, 43 Cal 2d at 488 ("Defendant's intent to induce plaintiffs to alter their position can be inferred from the fact that he made the misrepresentations with knowledge that plaintiffs would act in reliance on them."). Dalessio has therefore failed to carry his burden of demonstrating the absence of a triable of issue of fact regarding his intent to deceive.

4

Next, Dalessio argues that Allmerica cannot show that it actually and reasonably relied upon the misrepresentations contained in Dalessio's application. The thrust of Dalessio's argument is that Allmerica cannot be trusted and therefore "the Court must draw the strongest allowable presumptions and inferences" in Dalessio's favor, viz, "that prior to issuing the policy [Allmerica] requested and received [Dalessio]'s medical records from [Dalessio]'s attending physician, and that these records revealed [Dalessio]'s prior illnesses, provided the name of [Dalessio]'s psychiatrist and thus access to all of [Dalessio]'s medical records." Doc #270 at 15-17.

The only cogent aspect of Dalessio's argument is his suggestion that Allmerica received Dalessio's medical file kept by his attending physician (as opposed to simply an attending physician's statement ("APS"), which in this case stated that Dalessio's health was "[e]xcellent," e g, Shane Decl, Ex E), prior to issuing the policy. This is not the first time Dalessio has advanced this argument. But now, as before, "[a]s there is not evidence that Allmerica received Dalessio's medical files before it

13

issued the policy, this argument fails."  Doc #229 at 9.

The remainder of Dalessio's argument is predicated upon his allegation that Allmerica and its agents have made numerous false or contradictory statements in the course of this litigation. Simply put, the portions of the record cited by Dalessio do not substantiate his accusations.  Accordingly, the court has no trouble declining Dalessio's invitation to indulge in the presumption that, before the policy issued, Allmerica had obtained medical records that disclosed the true state of Dalessio's medical affairs.  Dalessio has failed to carry his burden of demonstrating the absence of a genuine issue regarding Allmerica's reasonable reliance upon his application.

5

In sum, based on the record before the court, the court cannot say that the trier of fact could not reasonably infer that Dalessio made false statements on his insurance application with knowledge of their falsity and intent to deceive and induce SMA to issue the policy.  Resolution of issues of knowledge and intent almost certainly turn upon credibility determinations that would be improper at this time.  Because Dalessio has failed to demonstrate that the trier of fact could not permissibly find fraud on the present record, his motion for summary judgment on Allmerica's claim for fraud is DENIED.

//

//

//

//

United States District Court

For the Northern District of California

V

The last issue before the court is restitution.  Relief based on rescission may be granted to the aggrieved party, including restitution of benefits and any consequential damages so long as no duplicate or inconsistent relief is granted.  Cal Civ Code § 1692.  The court may also adjust the equities between the parties as justice may require.  Id.

Allmerica argues that it is entitled to restitution as result of the rescission granted in the 6/28/02 order.  Allmerica asks for the amount of benefits it paid to Dalessio (less premiums paid by Dalessio), attorney fees and interest.  Dalessio argues that Allmerica should be denied restitution under the doctrine of unclean hands.

A

The doctrine of unclean hands bars relief to a plaintiff who has violated conscience, good faith or other equitable principles relating to the transaction that gave rise to the cause of action.  Dollar Systems, Inc v Avcar Leasing Systems, Inc, 890 F2d 165, 173 (9th Cir 1989).  The doctrine does not apply to misconduct that occurs after the cause of action accrues.  Id. Additionally, courts do not apply the doctrine of unclean hands where the defendant has suffered no harm as a result of the plaintiff's actions.  Chitkin v Lincoln Nat'l Ins Co, 879 F Supp 841, 854 (SD Cal 1995).

The misconduct alleged by Dalessio does not rise to the level of unclean hands.  Due to the material misrepresentations contained in Dalessio's application, Allmerica had the right to rescind the policy immediately upon its issuance.  See Dollar

15

Systems, 890 F2d at 173.  Putting aside that most of the alleged instances of misconduct have not been substantiated by Dalessio, see Carmen v San Francisco Unified Sch Dist, 237 F3d 1026, 1030 (9th Cir 2001) ("[T]he district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." (emphasis added)), and putting aside that those portions of the record that are referenced do not exist, compare, e g, Doc #270 at 20 n 57 (citing Doc #243, Ex T at 173-74), with Doc #243 (containing no exhibit "T" nor any deposition transcript pages numbered "173" or "174"), most of the alleged misconduct would have occurred after Allmerica's right to rescind accrued (e g, illegal withholding of benefits, filing of false complaint, discovery abuses, prolonged depositions, untimely pleadings, fabrication of evidence, Doc #270 at 20).  Accordingly, these instances of alleged misconduct cannot support a defense of unclean hands.  See Dollar Systems, 890 F2d at 173.  Only the allegation that Allmerica altered his application warrants discussion because such alteration would have occurred before Allmerica's right to rescind accrued.

Dalessio argues that alteration of an insurance application is a crime and this criminal conduct bars recovery. But there is no evidence that Allmerica or its predecessor altered Dalessio's application.  Apparently, Dalessio's accusation is based on his assertion that he applied to State Mutual, not SMA: "[U]nder California law, [Allmerica]'s use of [Dalessio]'s application to State Mutual without his knowledge or permission constitutes an alteration of his application * * *."  Doc #270 at 10.  Dalessio cites Cal Ins Code § 10382, which prohibits

United States District Court

For the Northern District of California

alteration of an insurance application but in no way supports the
theory of constructive alteration advanced by Dalessio.  There is
simply no evidence that Allmerica (or its predecessor) actually
altered Dalessio's application.

Because Dalessio failed to establish any misconduct by
Allmerica that pre-dates Allmerica's right to rescind the contract,
Dalessio's motion for summary judgment in his favor on Allmerica's
claim for restitution is DENIED.


B

1

Although the court concludes that Allmerica is entitled
to restitution by virtue of the court's earlier judgment in its
favor on its claim for rescission, Allmerica has failed to provide
evidence by which the amount of restitution can be ascertained.  As
the court observed in the 6/28/02 order (at page 2), there is
evidence that Allmerica paid Dalessio $253,527.53 in disability
benefits, see Doc #211 (Kwasniak Decl) ¶21.  Although counsel for
Allmerica represents that Dalessio paid $8,299.44 in premiums, see
Doc #272 at 3, 8, Allmerica neither provided supporting evidence
nor pointed to evidentiary support already contained in the now
rather unwieldy record.


2

Allmerica requests attorney fees in connection with its
claims for rescission and restitution.  Under Cal Civ Code § 1692,
the court may award attorney's fees to a party prevailing on a
claim for rescission and restitution.  The manner in which the

17

United States District Court

For the Northern District of California

court exercises its discretion in this respect is, however, governed by federal law.  In a rescission case applying § 1692, the Ninth Circuit summarized the applicable law on discretionary fee awards:

> A prevailing federal litigant ordinarily may not, absent statute or enforceable contract, collect attorneys' fees.  However, a court may assess attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  Bad faith may be found, not only in the actions that led to the lawsuit but also in the conduct of the litigation.

Dollar Systems, 890 F2d at 175 (citations and quotations omitted). Further, "[a]n award of attorneys' fees for bad faith is punitive and the penalty can be imposed only in exceptional cases and for dominating reasons of justice."  Id (citations and quotations omitted).

This case is exceptional in that it is now in its tenth year despite the relative simplicity of the issues.  Although it appears that Allmerica bears some responsibility for this state of affairs, there can be little doubt that Dalessio has prolonged these proceedings with duplicative dispositive motions (including at least one motion for reconsideration), premature appeals and a motion to recuse the undersigned.  But Allmerica's assertion that "[b]ut for" Dalessio's conduct it would not have been burdened with this litigation, Doc #272 at 8, is insufficient under the standard set forth in Dollar Systems.  In any event, it is best to refrain from awarding fees until all claims have been adjudicated.  Only then can the equities be balanced in a fully informed manner.

3

United States District Court
For the Northern District of California

Allmerica also seeks interest from the time it first started to pay out benefits in 1990. "State pre-judgment interest rules are to be applied in diversity cases." <u>James B Lansing Sound, Inc v Nat'l Union Fire Ins Co</u>, 801 F2d 1560, 1569 (9th Cir 1986). Pursuant to Cal Civ Code § 3287(a),

> [e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

Under § 3287(a), "[p]rejudgment interest is also due on money paid as restitution." <u>Irwin v Mascott</u>, 112 F Supp 2d 937, 956 (ND Cal 2000). "In an action based upon rescission of a contract, the plaintiff's right to repayment of moneys paid under the contract is fixed by the rescission, and interest on the moneys paid thus is recoverable from the date of rescission." <u>Leaf v Rauch</u>, 47 Cal App 3d 371, 376 (1975); see also <u>Lund v Cooper</u>, 1259 Cal App 2d 349, 352 (1958).

Applying the foregoing principles, because the amount of restitution due Allmerica is, and was, capable of ready and certain calculation, Allmerica is entitled to pre-judgment interest at the rate provided by California law for the difference between the benefits it paid to Dalessio and the premiums it received from Dalessio from the date it rescinded the insurance policy, which in this case is December 18, 2005, the date that Allmerica terminated Dalessio's benefits. Kwasniak Decl ¶21.

//
//

United States District Court
For the Northern District of California

4

The court concludes that Allmerica is entitled to restitution in an amount equal to $253,527.53 less premiums to paid to Allmerica or its predecessor in interest, plus pre-judgment interest thereon.  Upon a proper showing of the premiums paid by Dalessio, Allmerica's claims for rescission and restitution will be fully adjudicated and judgment will be entered at the appropriate time.  With these caveats, Allmerica's motion for summary judgment on its claim for restitution is GRANTED.

A motion for attorney fees shall be filed, if at all, following entry of final judgment pursuant to FRCP 54(d)(2).  Any request for attorney fees shall conform to the analysis of lodestar fee awards set forth in In re HPL Technologies Sec, Inc Litig, 366 F Supp 2d 912, 919-22 (ND Cal 2005) (Walker, J).  See also Willis v City of Oakland, 231 FRD 597, 600-02 (ND Cal 2005) (Walker, J).


VI

In sum, Dalessio's motion for summary judgment is DENIED. Allmerica's motion for summary judgment in its favor is GRANTED IN PART and DENIED IN PART.

//
//
//
//
//
//
//
//

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       The parties are ORDERED to attend a further case management conference on March 28, 2006, at 9:00 am, for purposes of scheduling a pretrial conference and trial date.  The parties may mutually arrange an alternative date for the further case management conference with the courtroom deputy, Ms Cora Delfin, 415-522-2039, <u>provided that</u> the further case management conference shall be held no later than April 21, 2006.  Once scheduled, the case management conference will not be continued except upon good cause shown.  The parties shall not file any further dispositive motions.

       SO ORDERED.


_____

VAUGHN R WALKER

United States District Chief Judge